1  BRIAN S. KABATECK (152054)
   bsk@kbklawyers.com
2  NATALIE S. PANG (305886)
   np@kbklawyers.com
3  KABATECK BROWN KELLNER
   644 South Figueroa Street
4  Los Angeles, California 90017
   Telephone: (213) 217-5000
5  Facsimile: (213) 217-5010

6  Attorneys for Plaintiffs and the Proposed
   Classes

7

8              UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT COURT OF CALIFORNIA

10                 SOUTHERN DIVISION

11 WENDY and ROY DURAN, on          ) CASE NO.
   behalf of themselves, and all others )
12 similarly situated,               ) CLASS ACTION COMPLAINT FOR:
                                      )
13          Plaintiffs,              ) 1)  WILLFUL VIOLATION OF THE
                                      )     FAIR CREDIT REPORTING ACT;
14     vs.                           ) 2)  NEGLIGENT VIOLATION OF
                                      )     THE FAIR CREDIT REPORTING
15 EQUIFAX, INC.; and DOES 1 to 10,  )     ACT;
   inclusive,                        ) 3)  NEGLIGENCE;
16                                    ) 4)  NEGLIGENCE PER SE;
            Defendants.              ) 5)  VIOLATION OF THE
17                                    )     CALIFORNIA UNFAIR
                                      )     COMPETITION LAW;
18                                    ) 6)  VIOLATION OF THE
                                      )     CALIFORNIA CUSTOMER
19                                    )     RECORDS ACT; and
                                      ) 7)  VIOLATION OF THE
20                                    )     CALIFORNIA CONSUMERS
                                      )     LEGAL REMEDIES ACT
21                                    )
                                      ) JURY TRIAL DEMANDED
22 ──────────────────────────────────)

23

24

25

26

27

28

                    CLASS ACTION COMPLAINT

Plaintiffs Wendy and Roy Duran ("Plaintiffs"), individually and on behalf of the classes defined below, bring this Class Action Complaint ("Complaint") against Equifax, Inc. ("Equifax"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters, and allege as follows:

## I.    INTRODUCTION

1.      On September 7, 2017, Equifax announced a nationwide data breach affecting an estimated 143 million consumers (the "Data Breach").  According to Equifax's press release and other public statements, unauthorized parties accessed consumers' sensitive, personal information maintained by Equifax by exploiting a website application vulnerability.  Equifax claims that based on its investigation, the unauthorized access occurred from mid-May through July 2017.  The information included names, addresses, Social Security numbers, dates of birth, and, in some instances, driver's license numbers.  Equifax also admitted that credit card numbers for approximately 209,000 consumers, and certain dispute documents with personal identifying information ("PII") for approximately 182,000 consumers were accessed.

2.      The Data Breach occurred because Equifax failed to implement adequate security measures to safeguard Plaintiffs' and other consumers' PII and willfully ignored known weaknesses in its data security, including prior hacks into its information systems.  Unauthorized parties routinely attempt to gain access to and steal personal information from networks and information systems—especially from entities such as Equifax, which are known to possess a large number of individuals' valuable personal and financial information.

3.      Armed with the personal information obtained in the Data Breach, identity thieves can commit a variety of crimes that harm victims of the Data Breach.  For instance, they can take out loans, mortgage property, and open

**CLASS ACTION COMPLAINT**

financial accounts and credit cards in a victim's name; use a victim's information to obtain government benefits or file fraudulent returns to obtain a tax refund; obtain a driver's license or identification card in a victim's name; gain employment in a victim's name; obtain medical services in a victim's name; or give false information to police during an arrest.  Hackers also routinely sell individuals' PII to other criminals who intend to misuse the information.

4.     As a result of Equifax's willful failure to prevent the Data Breach, Plaintiffs and class members have been exposed to fraud, identity theft, and financial harm, as detailed below, and to a heightened, imminent risk of such harm in the future.  Plaintiffs and class members have to monitor their financial accounts and credit histories more closely and frequently to guard against identity theft.  Class members also have incurred, and will continue to incur, additional out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures in order to detect, protect, and repair the Data Breach's impact on their PII for the remainder of their lives.  Plaintiffs have already spent time addressing the Data Breach and anticipate spending considerable time and money for the rest of their lives in order to detect and respond to the impact of the Data Breach.

5.     There is a strong likelihood that class members already have or will become victims of identity fraud given the breadth of their PII that is now publicly available.  Javelin Strategy & Research reported in its 2014 Identity Fraud Study that "[d]ata breaches are the greatest risk factor for identity fraud." In fact, "[i]n 2013, one in three consumers who received notification of a data breach became a victim of fraud."  Javelin also found increased instances of fraud other than credit card fraud, including "compromised lines of credit, internet accounts (e.g., eBay, Amazon) and email payment accounts such as PayPal."

**CLASS ACTION COMPLAINT**

1   6.  Plaintiffs bring this action to remedy these harms on behalf of

2 themselves and all similarly situated individuals whose PII was accessed during

3 the Data Breach.  Plaintiffs seek the following remedies, among others: statutory

4 damages under the Fair Credit Reporting Act ("FCRA") and state consumer

5 protection statutes, reimbursement of out-of-pocket losses, other compensatory

6 damages, further credit monitoring services with accompanying identity theft

7 insurance beyond Equifax's current one-year offer, and injunctive relief

8 including an order requiring Equifax to implement improved data security

9 measures.

## II. JURISDICTION AND VENUE

11   7.  This Court has federal question jurisdiction under 28 U.S.C. § 1331

12 because Plaintiffs are bringing claims under the FCRA, 15 U.S.C. §§ 1681e, *et seq.*

13   8.  This Court also has diversity jurisdiction under the Class Action

14 Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more

15 than 100 class members, the amount in controversy exceeds $5 million exclusive of

16 interest and costs, and many members of the proposed classes are citizens of states

17 different from Equifax.

18   9.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because

19 Equifax regularly transacts business here, and Plaintiffs and some of the class

20 members reside in this District.  In addition, the events giving rise to Plaintiffs'

21 causes of action arose, in part, in this District.

## III. PARTIES

### A. Plaintiffs

24   10.  Plaintiffs are residents of Fullerton, California and were California

25 residents during the period of the Data Breach.  Plaintiffs previously provided their

26 PII to Equifax and/or one of Equifax's many clients including, but not limited to,

27 their names, Social Security numbers and dates of birth.  Plaintiffs are victims of

28 the Data Breach.  After Plaintiffs received notice of the Data Breach and were

**CLASS ACTION COMPLAINT**

informed that they were impacted by the Data Breach, Plaintiffs spent several hours addressing the potential impact of the Data Breach, and are taking action to protect their PII from further compromise.  Plaintiffs have also spent time and effort monitoring their financial accounts, and anticipate spending more time and effort monitoring their financial accounts in the future as a result of the Data Breach.

### B.    Defendants

11.    Equifax is a Delaware corporation with its principal place of business located at 1550 Peachtree Street NE, Atlanta, Georgia 30309.  Equifax may be served through its registered agent, Shawn Baldwin, at its principal office address identified above.

12.    The true names and/or capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 10 inclusive, and each of them, are unknown.  Plaintiffs therefore sue these defendants by fictitious names. Plaintiffs are informed and believes, and upon such information and belief hereby alleges, that each of the defendants and fictitiously named herein as a DOE is legally responsible, negligently or in some other manner, for the events and happenings hereinafter referred to and proximately caused the damages to Plaintiffs and class members as hereinafter alleged.  Plaintiffs will seek leave of court to amend this Complaint to insert the true names and/or capacities of such fictitiously named defendants when the same have been ascertained.

13.    At all times herein mentioned, defendants, and each of them, were an agent or joint venturer of each of the other defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency.  Each defendant had actual and/or constructive knowledge of the acts of each of the other defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

14.    Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other defendants in breaching their obligations

**CLASS ACTION COMPLAINT**

to Plaintiffs and the members of the proposed classes, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

15.    Equifax is one of the major credit reporting bureaus in the United States.  As a credit bureau service, Equifax is engaged in a number of credit-related services for individuals, businesses, and compliance with government regulations.  Specifically, Equifax provides business services to the automotive, communications, utilities and digital media, education, financial services, healthcare, insurance, mortgage, restaurant, retail and wholesale trade, staffing, and transportation and distribution industries.[1]  Equifax markets and sells many products to consumers and businesses, including Consumer Reports, which provides "access to current personally identifiable information for over 210 million consumers."[2]  Equifax's Consumer Reports also includes "tradelines on over 1.8 billion trades updated monthly" and "600 million unique, annual inquiries."  Equifax's Consumer Reports provides "access to the consumer's name, current address, address, previous former addresses, birth date, former names and Social Security number."  Equifax's Consumer Reports is a product designed to "increase revenue":[3]

---

[1] *See Equifax's Business Industries*, EQUIFAX, http://www.equifax.com/business/ (last visited Sept. 8, 2017).

[2] *See Equifax's Consumer Reports Product Overview*, EQUIFAX, http://www.equifax.com/business/consumer-reports (last visited Sept. 8, 2017).

[3] *See Equifax's Consumer Reports Product Sheet*, EQUIFAX, http://www.equifax.com/assets/USCIS/efx-00198_consumer_reports.pdf (last visited Sept. 8, 2017).

**CLASS ACTION COMPLAINT**

*Make effective decisions that increase revenue*

Trust Equifax Consumer Reports to deliver the powerful combination of predictive consumer credit data and proven expertise backed by unmatched industry leadership. Make faster decisions with the competitive advantage of data speed and system integrity. Strengthen predictive ability, mitigate risk, manage acquisition costs and increase revenue with proven decisioning insight from Equifax Consumer Reports.

## IV.   STATEMENT OF FACTS

### A.   The Data Breach Compromised the PII of 143 Million Consumers

16.   On September 7, 2017, Equifax announced that its systems had been breached and that the Data Breach affected approximately 143 million consumers. According to Equifax's website regarding the Data Breach, unauthorized users acquired the PII of approximately 143 million consumers from certain files maintained and stored by Equifax.  The PII included names, addresses, Social Security numbers, dates of birth, and, in some instances, driver's license numbers, and other personal information:

> Equifax today announced a cybersecurity incident potentially impacting approximately ***143 million U.S. consumers***.  Criminals exploited a U.S. website application vulnerability to gain access to certain files. Based on the company's investigation, the unauthorized access occurred from mid-May through July 2017.
> …
> The information accessed primarily includes ***names, Social Security numbers, birth dates, addresses and, in some instances, driver's license numbers***.  In addition, ***credit card numbers for approximately 209,000 consumers, and certain dispute documents with personal identifying information for approximately 182,000 consumers***, were accessed.[4]

17.   On its website, Equifax admits learning of the Data Breach on July 29, 2017, but only began notifying consumers through a press release and generic

---

[4] *See Cybersecurity Incident & Important Consumer Information*, EQUIFAX, https://www.equifaxsecurity2017.com/ (last visited Sept. 8, 2017).

**CLASS ACTION COMPLAINT**

website at https://www.equifaxsecurity2017.com on September 7, 2017, almost four months after the Data Breach began.[5]

18.    Instead of immediately notifying consumers when it discovered the Data Breach, Equifax executives sold at least $1.8 million worth of shares before the public disclosure of the breach.  It has been reported that its Chief Financial Officer John Gamble sold shares worth $946,374, its president of U.S. information solutions, Joseph Loughran, exercised options to dispose of stock worth $584,099, and its president of workforce solutions, Rodolfo Ploder, sold $250,458 of stock on August 2, 2017.[6]

19.    In response to the questions of "Why am I learning about this incident through the media?" and "Why didn't Equifax notify me directly?", Equifax states that it "issued a national press release in order to notify U.S. consumers of this incident and has established a website, www.equifaxsecurity2017.com, where U.S. consumers can receive further information."[7]

20.    Despite the fact that Equifax has the names and addresses for the 143 million U.S. Data Breach victims, Equifax has not provided direct mail notices to them; rather, Equifax states that it will only provide direct mail notice to the 209,000 consumers whose credit card numbers and 182,000 consumers whose dispute documents with PII were impacted.[8]

21.    On its website, Equifax admits the unauthorized disclosure of consumer data and warned consumers of the consequences of the Data Breach:

---

[5] *See Cybersecurity Incident & Important Consumer Information*, EQUIFAX, https://www.equifaxsecurity2017.com/frequently-asked-questions/ (last visited Sept. 8, 2017).
[6] *See Three Equifax Managers Sold Stock Before Cyber Hack Revealed*, BLOOMBERG, https://www.bloomberg.com/news/articles/2017-09-07/three-equifax-executives-sold-stock-before-revealing-cyber-hack (last visited Sept. 8, 2017).
[7] *Id.*
[8] *See Cybersecurity Incident & Important Consumer Information*, EQUIFAX, https://www.equifaxsecurity2017.com/ (last visited Sept. 8, 2017).

**CLASS ACTION COMPLAINT**

> We recommend that consumers be vigilant in reviewing their account statements and credit reports, and that they immediately report any unauthorized activity to their financial institutions. We also recommend that they monitor their personal information and visit the Federal Trade Commission's, website, www.ftc.gov/idtheft, to obtain information about steps they can take to better protect against identity theft as well as information about fraud alerts and security freezes.[9]

22.     On its Data Breach website, Equifax invites individuals to determine if their personal information may have been impacted by the Data Breach by providing their last name and the last six digits of their Social Security number. If an individual is determined to have been affected, Equifax provides them with a date to return to the website to enroll in Equifax's TrustedID Premier credit monitoring service. If an individual is determined to have not been affected, Equifax provides them with this information, but then still provides them with a link to enroll in (and pay for) Equifax's TrustedID Premier credit monitoring service.

**B.    Equifax Promised to Protect its Customers' PII, but Maintained Inadequate Data Security**

23.     Equifax is one of the major credit reporting bureaus in the United States. As a credit bureau service, Equifax is engaged in a number of credit-related services for individuals, businesses, and compliance with government regulations. Specifically, Equifax provides business services to the automotive, communications, utilities and digital media, education, financial services, healthcare, insurance, mortgage, restaurant, retail and wholesale trade, staffing, and transportation and distribution industries.[10] Equifax markets and sells many

---

[9] *See Cybersecurity Incident & Important Consumer Information*, EQUIFAX, https://www.equifaxsecurity2017.com/frequently-asked-questions/ (last visited Sept. 8, 2017).

[10] *See Equifax's Business Industries*, EQUIFAX, http://www.equifax.com/business/ (last visited Sept. 8, 2017).

**CLASS ACTION COMPLAINT**

products to consumers and businesses, including Consumer Reports, which provides "access to current personally identifiable information for over 210 million consumers."[11]  Equifax's Consumer Reports also includes "tradelines on over 1.8 billion trades updated monthly" and "600 million unique, annual inquiries." Equifax's Consumer Reports provides "access to the consumer's name, current address, address, previous former addresses, birth date, former names and Social Security number."[12]

24.    Prior to the Data Breach, Equifax promised its customers and everyone else whose PII it collects that it would reasonably protect their PII.  Equifax's privacy policy stated, in relevant part:

> We have built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to ***protect the privacy and confidentiality of personal information about consumers***.  We also protect the sensitive information we have about businesses.  ***Safeguarding the privacy and security of information, both online and offline, is a top priority for Equifax.***[13]

25.    Equifax's policy further stated:

> We are committed to protecting the security of your information through procedures and technology designed for this purpose by taking these steps:
> • We limit access to your personal information to employees having a reasonable need to access this information to provide products and services to you. Employees who misuse information are subject to

---

[11] *See Equifax's Consumer Reports Product Overview*, EQUIFAX, http://www.equifax.com/business/consumer-reports (last visited Sept. 8, 2017).

[12] *See Equifax's Consumer Reports Product Sheet*, EQUIFAX, http://www.equifax.com/assets/USCIS/efx-00198_consumer_reports.pdf (last visited Sept. 8, 2017).

[13] *See Equifax's Privacy Policy*, EQUIFAX, http://www.equifax.com/privacy/ (last visited Sept. 8, 2017).

**CLASS ACTION COMPLAINT**

disciplinary action, including termination.

- We have reasonable physical, technical and procedural safeguards to help protect your personal information.

- In areas that contain your personal information, we use secure socket layer (SSL) encryption to help protect this information while it is in transit between our servers and your computer.[14]

26.    Plaintiffs and Class members disclosed their PII to Equifax in connection with consumer transactions and Equifax compiled, maintained, furnished, and made available Plaintiffs' and class members' PII. Equifax was allowed to perform such services involving sensitive information only if it adhered to the requirements of laws meant to protect the privacy of such information, such as the FCRA and the Gramm-Leach-Bliley Act ("GLBA"). Equifax's maintenance, use, and furnishing of such PII is and was intended to affect Plaintiffs and other class members, and the harm caused by disclosure of that PII in the Data Breach was entirely foreseeable to Equifax.

**C.    Equifax Experienced Prior Data Breaches, but Nevertheless Failed to Implement Appropriate Security**

27.    Although Equifax claims to be a leader in data security and its privacy policy promises to reasonably safeguard consumer data, Equifax's own data security practices were inadequate. Equifax was well aware of this fact because it had experienced multiple data breaches in recent years.

28.    In March 2014, Equifax reported a data breach to the New Hampshire Attorney General involving an IP address operator who was able to obtain Equifax consumer credit reports using sufficient personal information to bypass Equifax's

---

[14] *See Equifax's Personal Credit Reports Privacy Policy*, EQUIFAX, http://www.equifax.com/privacy/ (last visited Sept. 8, 2017).

**CLASS ACTION COMPLAINT**

identity verification process.[15]

29.    In May 2016, Equifax's W-2 Express website suffered a data breach where an attacker was able to access, download and post the names, addresses, social security numbers and other personal information of over 430,000 Kroger employees.  The attackers were able to access the W-2 data by merely entering Equifax's portal with an employee's default PIN code, which was the last four digits of the employee's Social Security number and their four-digit birth year.[16]

30.    Independent security researchers have also found that Equifax's website is vulnerable.  In 2016, a security researcher found a common vulnerability known as cross-site scripting (XSS) on the main Equifax website.  Such XSS bugs allow attackers to send specially-crafted links to Equifax customers and, if the target clicks through and is logged into the site, their username and password can be revealed to the hacker.[17]

31.    Researcher Kenneth White just recently discovered a link in the source code on the Equifax consumer sign-in page that pointed to Netscape, a web browser that was discontinued in 2008.  Kevin Beaumont, a British security professional, found decade-old software in use, including IBM WebSphere, Apache Struts and Java, many of which are outdated and subject to well-known vulnerabilities.[18]

---

[15] *See Letter from Troy G. Kubes, Vice President & Associate Group Counsel at Equifax Legal Department, to Attorney General Joseph Foster*, MAR. 5, 2014, https://www.doj.nh.gov/consumer/security-breaches/documents/equifax-20140305.pdf (last visited Sept. 8, 2017).

[16] *See Crooks Grab W-2s from Credit Bureau Equifax*, KREBS ON SECURITY, http://krebsonsecurity.com/2016/05/crooks-grab-w-2s-from-credit-bureau-equifax/ (last visited Sept. 8, 2017).

[17] *See A Brief History Of Equifax Security Fails*, FORBES, https://www.forbes.com/sites/thomasbrewster/2017/09/08/equifax-data-breach-history/#53a60715677c (last visited Sept. 8, 2017).

[18] *Id.*

**CLASS ACTION COMPLAINT**

**D.** **The Data Breach has Exposed Plaintiffs and Other Consumers to Fraud, Identity Theft, Financial Harm, and a Heightened, Imminent Risk of Such Harm in the Future**

32.     Since identity thieves use the PII of other people to commit fraud or other crimes, Plaintiffs and other consumers whose information was exposed in the Data Breach are subject to an increased, concrete risk of identity theft.  Javelin Strategy & Research, a research-based consulting firm that specializes in fraud and security in advising its clients, reported in its 2014 Identity Fraud Study that "[d]ata breaches are the greatest risk factor for identity fraud."  In fact, "[i]n 2013, one in three consumers who received notification of a data breach became a victim of fraud."  Javelin also found increased instances of fraud other than credit card fraud, including "compromised lines of credit, internet accounts (*e.g.*, eBay, Amazon) and email payment accounts such as PayPal."[19]

33.     The exposure of Plaintiffs' and class members' Social Security numbers in particular poses serious problems.  Criminals frequently use Social Security numbers to create false bank accounts, file fraudulent tax returns, and incur credit in the victim's name.  Neal O'Farrell, a security and identity theft expert for Credit Sesame calls a Social Security number "your secret sauce," that is "as good as your DNA to hackers."[20]  Even where data breach victims obtain a new Social Security number, the Social Security Administration warns "that a new number probably will not solve all [] problems . . . and will not guarantee [] a fresh

---

[19]  *See* https://www.javelinstrategy.com/press-release/new-identity-fraud-victim-every-two-seconds-2013-according-latest-javelin-strategy (last visited April 14, 2016).

[20]  Tips, How to Protect Your Kids From the Anthem Data Breach," Kiplinger (Feb. 10, 2015), *available at*

http://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html (last visited April 14, 2016).

**CLASS ACTION COMPLAINT**

start."[21]  In fact, "[f]or some victims of identity theft, a new number actually creates new problems."  One of those new problems is that a new Social Security number will have a completely blank credit history, making it difficult to get credit for a few years unless it is linked to the old compromised number.

34.   As a result of the compromising of their personal information, Plaintiffs and class members will face an increased risk of experiencing the following injuries:

- money and time expended to prevent, detect, contest, and repair identity theft, fraud, and/or other unauthorized uses of personal information;

- money and time lost as a result of fraudulent access to and use of their financial accounts;

- loss of use of and access to their financial accounts and/or credit;

- impairment of their credit scores, ability to borrow, and/or ability to obtain credit;

- lowered credit scores resulting from credit inquiries following fraudulent activities;

- costs and lost time obtaining credit reports in order to monitor their credit records;

- money, including fees charged in some states, and time spent placing fraud alerts and security freezes on their credit records;

- money and time expended to avail themselves of assets and/or credit frozen or flagged due to misuse;

- costs of credit monitoring that is more robust than the services being offered by Equifax;

---

[21]  Social Security Administration, Identity Theft and Your Social Security Number, pp. 7-8, *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Mar. 10, 2016)

**CLASS ACTION COMPLAINT**

- anticipated future costs from the purchase of credit monitoring and/or identity theft protection services once the temporary services being offered by Equifax expire;

- costs and lost time from dealing with administrative consequences of the Data Breach, including by identifying, disputing, and seeking reimbursement for fraudulent activity, canceling compromised financial accounts and associated payment cards, and investigating options for credit monitoring and identity theft protection services;

- money and time expended to ameliorate the consequences of the filing of fraudulent tax returns;

- lost opportunity costs and loss of productivity from efforts to mitigate and address the adverse effects of the Data Breach including, but not limited to, efforts to research how to prevent, detect, contest, and recover from misuse of their personal information;

- loss of the opportunity to control how their personal information is used; and

- continuing risks to their personal information, which remains subject to further harmful exposure and theft as long as Equifax fails to undertake appropriate, legally required steps to protect the personal information in its possession.

35.     The risks that Plaintiffs and Class members bear as a result of the Data Breach cannot be mitigated by the credit monitoring Equifax has offered to affected consumers because it can only help detect, but will not prevent, the fraudulent use of Plaintiffs' and class members' PII.  Instead, Plaintiffs and class members will need to spend time and money to protect themselves.  For instance, credit reporting agencies impose fees for credit freezes in certain states.  In addition, while credit reporting agencies offer consumers one free credit report per year, consumers who request more than one credit report per year from the same credit reporting agency

**CLASS ACTION COMPLAINT**

1  (such as Equifax) must pay a fee for the additional report.  Such fees constitute out-

2  of-pocket costs to Plaintiffs and class members.

3      36.    The risks borne by affected consumers are not hypothetical: Equifax

4  has admitted that class members' personal information was disclosed and

5  downloaded in the Data Breach, has admitted the risks of identity theft, and has

6  encouraged consumers to vigilantly monitor their accounts.

7    **E.    Equifax was Required to Investigate and Provide Timely and**

8         **Adequate Notification of the Data Breach under Federal**

9         **Regulations**

10     37.    The Gramm-Leach-Bliley Act ("GLBA") imposes upon "financial

11 institutions" "an affirmative and continuing obligation to respect the privacy of its

12 customers and to protect the security and confidentiality of those customers'

13 nonpublic personal information."  15 U.S.C. § 6801.  To satisfy this obligation,

14 financial institutions must satisfy certain standards relating to administrative,

15 technical, and physical safeguards:

16      (1) to *insure the security and confidentiality of customer*
17          *records and information*;

18      (2) to *protect against any anticipated threats or hazards to*
19          *the security or integrity of such records*; and

20      (3) to *protect against unauthorized access to or use of such*
21          *records* or information which could result in substantial
22          harm or inconvenience to any customer.   15 U.S.C. §
          6801(b) (emphasis added).
23

24     38.    In order to satisfy their obligations under the GLBA, financial

25 institutions must "develop, implement, and maintain a comprehensive information

26 security program that is [1] written in one or more readily accessible parts and [2]

27 contains administrative, technical, and physical safeguards that are appropriate to

28 [their] size and complexity, the nature and scope of [their] activities, and the

**CLASS ACTION COMPLAINT**

sensitivity of any customer information at issue." 16 C.F.R. § 314.4. "In order to develop, implement, and maintain [their] information security program, [financial institutions] shall:

(a)   Designate an employee or employees to coordinate [their] information security program.

(b) ***Identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information*** that could result in the unauthorized disclosure, misuse, alteration, destruction or other compromise of such information, and assess the sufficiency of any safeguards in place to control these risks.   At a minimum, such a risk assessment should include consideration of risks in each relevant area of [their] operations, including:

(1) Employee training and management;

(2) Information systems, including network and software design, as well as information processing, storage, transmission and disposal; and

(3) Detecting, preventing and responding to attacks, intrusions, or other systems failures.

(c) ***Design and implement information safeguards to control the risks [they] identify through risk assessment***, and regularly test or otherwise monitor the effectiveness of the safeguards' key controls, systems, and procedures.

(d)  Oversee service providers, by:

(1) Taking reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue; and

(2) Requiring [their] service providers by contract to implement and maintain such safeguards.

**CLASS ACTION COMPLAINT**

(e) ***Evaluate and adjust [their] information security program in light of the results*** of the testing and monitoring required by paragraph (c) of this section; any material changes to [their] operations or business arrangements; or any other circumstances that [they] know or have reason to know may have a material impact on [their] information security program."

*Id.*

39. In addition, under the Interagency Guidelines Establishing Information Security Standards, 12 C.F.R. pt. 225, App. F, financial institutions have an affirmative duty to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems." *See id.* "At a *minimum*, an institution's response program should contain procedures for the following:

   a. Assessing the nature and scope of an incident, and identifying what customer information systems and types of customer information have been accessed or misused;

   b. Notifying its primary Federal regulator as soon as possible when the institution becomes aware of an incident involving unauthorized access to or use of sensitive customer information, as defined below;

   c. Consistent with the Agencies' Suspicious Activity Report ("SAR") regulations, notifying appropriate law enforcement authorities, in addition to filing a timely SAR in situations involving Federal criminal violations requiring immediate attention, such as when a reportable violation is ongoing;

   d. Taking appropriate steps to contain and control the incident to prevent further unauthorized access to or use of customer information, for example, by monitoring, freezing, or closing affected accounts, while preserving records and other evidence; and

   e. Notifying customers when warranted.

**CLASS ACTION COMPLAINT**

*Id.* (emphasis added).

40.     Further, "[w]hen a financial institution becomes aware of an incident of unauthorized access to sensitive customer information, the institution should conduct a reasonable investigation to promptly determine the likelihood that the information has been or will be misused.  If the institution determines that misuse of its information about a customer has occurred or is reasonably possible, it should notify the affected customer as soon as possible."  *See id.*

41.     Credit bureaus are "financial institutions" for purposes of the GLBA, and are therefore subject to its provisions.  *See TranUnion LLC v. F.T.C.*, 295 F.3d 42, 48 (D.C. Cir. 2002).  Under Regulation Y promulgated by the Federal Reserve Board, *Bank Holding Companies and Change in Bank Control*, "credit bureau services"[22] are "so closely related to banking or managing or controlling banks as to be a proper incident thereto."  Since Equifax is a credit bureau and performs credit bureau services, it qualifies as a financial institution for purposes of the GLBA.

42.     "Nonpublic personal information," includes PII (such as the PII compromised during the Data Breach) for purposes of the GLBA.  Likewise, "sensitive customer information" includes PII for purposes of the Interagency Guidelines Establishing Information Security Standards.

43.     Upon information and belief, Equifax failed to "develop, implement, and maintain a comprehensive information security program" with "administrative, technical, and physical safeguards" that were "appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue."  This includes, but is not limited to, (a) Equifax's failure to implement and maintain adequate data security practices to safeguard class members' PII; (b) failing to detect the Data Breach in a timely manner; and

---

[22]  Credit bureau services include ""[m]aintaining information related to the credit history of consumers and providing the information to a credit grantor who is considering a borrower's application for credit or who has extended credit to the borrower."  *See* 12 C.F.R. § 225.28.

**CLASS ACTION COMPLAINT**

(c) failing to disclose that its data security practices were inadequate to safeguard class members' PII.

44.     Upon information and belief, Equifax also failed to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems" as mandated by the GLBA.  This includes, but is not limited to, Equifax's failure to notify appropriate regulatory agencies, law enforcement, and the affected individuals themselves of the Data Breach in a timely and adequate manner.

45.     Upon information and belief, Equifax also failed to notify affected customers as soon as possible after it became aware of unauthorized access to sensitive customer information.

## V.    CLASS ALLEGATIONS

46.     Plaintiffs bring all claims as class claims under Federal Rule of Civil Procedure 23(b)(1), (b)(2), (b)(3), and (c)(4).

### A.    Nationwide Class

47.     Plaintiffs bring their FCRA, negligence, and negligence per se claims (Counts I-IV) on behalf of a proposed nationwide class ("Nationwide Class"), defined as follows:

> ***All natural persons and entities in the United States whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017.***

### B.    Statewide Classes

48.     Plaintiffs bring their state consumer protection statute and data breach notification claims (Counts V through VII) on behalf of a separate California Subclass.

**CLASS ACTION COMPLAINT**

49.     Plaintiffs also bring their negligence and negligence per se claims (counts III and IV) separately on behalf of the California Subclass, in the alternative to bringing those claims on behalf of the Nationwide Class.

50.     Except where otherwise noted, "Class Members" shall refer to members of the Nationwide Class and California Subclass, collectively.

51.     Excluded from the Nationwide Class and California Subclass are defendants and their current employees, as well as the Court and its personnel presiding over this action.

52.     The Nationwide and California Subclass meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and (b)(3) for all of the reasons set forth in Paragraphs 53-62:

53.     **Numerosity:** The Nationwide and California Subclass are so numerous that joinder of all members is impracticable.  According to Equifax, the Nationwide Class includes approximately 143 million individuals whose PII was acquired during the Data Breach.  On information and belief, Plaintiffs allege that there are millions of individuals in the California Subclass.  The parties will be able to identify each member of the Nationwide Class and California Subclass after Equifax's document production and/or related discovery.

54.     **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Nationwide and California Subclass including, but not limited to, the following:

- whether Equifax engaged in the wrongful conduct alleged herein;
- whether Equifax owed a duty to Plaintiffs and Class Members to adequately protect their PII;
- whether Equifax breached its duties to protect the personal information of Plaintiffs and Class Members;
- whether Equifax knew or should have known that its data security systems and processes were vulnerable to attack;

**CLASS ACTION COMPLAINT**

- • whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Equifax's conduct, including increased risk of identity theft and loss of value of PII;
- • whether Equifax violated the FCRA; and
- • whether Plaintiffs and Class Members are entitled to equitable relief including injunctive relief.

55.    **Typicality:** Plaintiffs' claims are typical of the claims of the Nationwide Class, and Plaintiffs' claims are typical of the claims of the California Subclass.  Plaintiffs, like all proposed Class Members, had their PII compromised in the Data Breach.

56.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Nationwide Class and California Subclass.  Plaintiffs have no interests that are adverse to, or in conflict with, the Class Members.  There are no claims or defenses that are unique to Plaintiffs.  Likewise, Plaintiffs have retained counsel experienced in class action and complex litigation, including data breach litigation, that have sufficient resources to prosecute this action vigorously.

57.    **Predominance:** The proposed action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Nationwide Class and California Subclass predominate over any questions which may affect only individual Class members in any of the proposed classes, including those listed in paragraph 40, *supra*.

58.    **Superiority:** The proposed action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of the Class Members.

**CLASS ACTION COMPLAINT**

59.     Absent a class action, the majority of Class Members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

60.     **Risks of Prosecuting Separate Actions:** Plaintiffs' claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Equifax. Equifax continues to maintain the PII of the Class Members and other individuals, and varying adjudications could establish incompatible standards with respect to: Equifax's duty to protect individuals' PII; whether Equifax's ongoing conduct violates the FCRA and other claims alleged herein; and whether the injuries suffered by Class Members are legally cognizable, among others.  Prosecution of separate actions by individual Class Members would also create a risk of individual adjudications that would be dispositive of the interests of other Class Members not parties to the individual adjudications, or substantially impair or impede the ability of Class Members to protect their interests.

61.     **Injunctive Relief:** In addition, Equifax has acted and/or refused to act on grounds that apply generally to the Nationwide and California Subclass, making injunctive and/or declaratory relief appropriate with respect to the classes under Federal Rule of Civil Procedure 23(b)(2).  Equifax continues to (1) maintain the PII of Class Members, (2) fail to adequately protect their PII, and (3) violate their rights under the FCRA and other claims alleged herein.

62.     **Certification of Particular Issues:** In the alternative, the Nationwide Class and California Subclass may be maintained as class actions with respect to particular issues, in accordance with Fed. R. Civ. P. 23(c)(4):

## VI.   CAUSES OF ACTION

## <u>COUNT I</u>

**WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**CLASS ACTION COMPLAINT**

**(On Behalf of the Nationwide Class)**

63.     Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

64.     As individuals, Plaintiffs and Class Members are consumers entitled to the protections of the FCRA.  15 U.S.C. § 1681a(c).

65.     Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ."  15 U.S.C. § 1681a(f).

66.     Equifax is a consumer reporting agency under the FCRA because for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

67.     As a consumer reporting agency, the FCRA requires Equifax to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title."  15 U.S.C. § 1681e(a).

68.     Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for - - (A) credit . . . to be used primarily for personal, family, or household purposes; . . . or (C) any other purpose authorized under section 1681b of this title."  15 U.S.C. § 1681a(d)(1).

69.     The compromised data was a consumer report under the FCRA

**CLASS ACTION COMPLAINT**

1   because it was a communication of information bearing on Class members'

2   credit worthiness, credit standing, credit capacity, character, general reputation,

3   personal characteristics, or mode of living used, or expected to be used or

4   collected in whole or in part, for the purpose of serving as a factor in

5   establishing the Class members' eligibility for credit.

6       70.    As a consumer reporting agency, Equifax may only furnish a

7   consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b,

8   "and no other." 15 U.S.C. § 1681b(a).  None of the purposes listed under 15

9   U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to

10  unauthorized or unknown entities, or computer hackers such as those who

11  accessed the Nationwide Class members' PII.  Equifax violated § 1681b by

12  furnishing consumer reports to unauthorized or unknown entities or computer

13  hackers, as detailed above.

14      71.    Equifax furnished the Nationwide Class members' consumer reports

15  by disclosing their consumer reports to unauthorized entities and computer

16  hackers; allowing unauthorized entities and computer hackers to access their

17  consumer reports; knowingly and/or recklessly failing to take security measures

18  that would prevent unauthorized entities or computer hackers from accessing

19  their consumer reports; and/or failing to take reasonable security measures that

20  would prevent unauthorized entities or computer hackers from accessing their

21  consumer reports.

22      72.    The Federal Trade Commission ("FTC") has pursued enforcement

23  actions against consumer reporting agencies under the FCRA for failing "take

24  adequate measures to fulfill their obligations to protect information contained in

25  consumer reports, as required by the" FCRA, in connection with data breaches.

26      73.    Equifax willfully violated § 1681b and § 1681e(a) by providing

27  impermissible access to consumer reports and by failing to maintain reasonable

28  procedures designed to limit the furnishing of consumer reports to the purposes

**CLASS ACTION COMPLAINT**

1    outlined under section 1681b of the FCRA.  The willful nature of Equifax's

2    violations is supported by, among other things, former employees' admissions

3    that Equifax's data security practices have deteriorated in recent years, and

4    Equifax's numerous other data breaches in the past.  Further, Equifax touts

5    itself as an industry leader in breach prevention; thus, Equifax was well aware

6    of the importance of the measures organizations should take to prevent data

7    breaches, and willingly failed to take them.

8         74.    Equifax also acted willfully because it knew or should have known

9    about its legal obligations regarding data security and data breaches under the

10   FCRA.  These obligations are well established in the plain language of the

11   FCRA and in the promulgations of the Federal Trade Commission.  See, e.g., 55

12   Fed. Reg. 18804 (May 4, 1990), 1990 Commentary On The Fair Credit

13   Reporting Act. 16 C.F.R. Part 600, Appendix To Part 600, Sec. 607 2E.

14   Equifax obtained or had available these and other substantial written materials

15   that apprised them of their duties under the FCRA.  Any reasonable consumer

16   reporting agency knows or should know about these requirements. Despite

17   knowing of these legal obligations, Equifax acted consciously in breaching

18   known duties regarding data security and data breaches and depriving Plaintiffs

19   and other members of the classes of their rights under the FCRA.

20        75.    Equifax's willful and/or reckless conduct provided a means for

21   unauthorized intruders to obtain and misuse Plaintiffs' and Nationwide Class

22   members' personal information for no permissible purposes under the FCRA.

23        76.    Plaintiffs and the Nationwide Class Members have been damaged by

24   Equifax's willful failure to comply with the FCRA.  Therefore, Plaintiffs and

25   each of the Nationwide Class members are entitled to recover "any actual

26   damages sustained by the consumer . . . or damages of not less than $100 and

27   not more than $1,000."  15 U.S.C. § 1681n(a)(1)(A).

28        77.     Plaintiffs and the Nationwide Class members are also entitled to

**CLASS ACTION COMPLAINT**

1  punitive damages, costs of the action, and reasonable attorneys' fees.  15 U.S.C.

2  § 1681n(a)(2), (3).

3  ## COUNT I

4  **NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**

5  **(On Behalf of the Nationwide Class)**

6        78.    Plaintiffs incorporate by reference all paragraphs above as if fully set

7  forth here.

8        79.    Equifax was negligent in failing to maintain reasonable procedures

9  designed to limit the furnishing of consumer reports to the purposes outlined under

10  section 1681b of the FCRA.  Equifax's negligent failure to maintain reasonable

11  procedures is supported by, among other things, former employees' admissions that

12  Equifax's data security practices have deteriorated in recent years, and Equifax's

13  numerous other data breaches in the past.  Further, as an enterprise claiming to be

14  an industry leader in data breach prevention, Equifax was well aware of the

15  importance of the measures organizations should take to prevent data breaches, yet

16  failed to take them.

17        80.    Equifax's negligent conduct provided a means for unauthorized

18  intruders to obtain Plaintiffs' and the Nationwide Class members' PII and

19  consumer reports for no permissible purposes under the FCRA.

20        81.    Plaintiffs and the Nationwide Class members have been damaged by

21  Equifax's negligent failure to comply with the FCRA.  Therefore, Plaintiffs and

22  each of the Nationwide Class members are entitled to recover "any actual damages

23  sustained by the consumer."  15 U.S.C. § 1681o(a)(1).

24        82.    Plaintiffs and the Nationwide Class members are also entitled to

25  recover their costs of the action, as well as reasonable attorneys' fees.  15 U.S.C. §

26  1681o(a)(2).

27  ## COUNT II

28  **NEGLIGENCE**

- 27 -

**CLASS ACTION COMPLAINT**

**(On Behalf of the Nationwide Class and California Subclass)**

83.     Plaintiffs incorporate by reference all paragraphs above as if fully set forth here.

84.     Equifax owed a duty to Plaintiffs and Class Members, arising from the sensitivity of the information and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, maintaining, monitoring, and testing Equifax's security systems, protocols, and practices to ensure that Class Members' information adequately secured from unauthorized access.

85.     Equifax's privacy policy acknowledged Equifax's duty to adequately protect Class Members' PII.

86.     Equifax owed a duty to Class Members to implement current and available technology that would prevent foreseeable data breaches, such as this one.

87.     Equifax owed a duty to Class Members to implement intrusion detection processes that would detect a data breach in a timely manner.

88.     Equifax also had a duty to delete any PII that was no longer needed to serve client needs.

89.     Equifax owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Class Members' PII.

90.     Equifax also had independent duties under Plaintiffs' and Class Members' state laws that required Equifax to reasonably safeguard Plaintiffs' and Class Members' PII and promptly notify them about the Data Breach.

91.     Equifax had a special relationship with Plaintiffs and Class Members from being entrusted with their PII, which provided an independent duty of care. Plaintiffs' and other Class Members' willingness to entrust Equifax with their PII was predicated on the understanding that Equifax would take adequate security precautions. Moreover, Equifax had the ability to protect its systems and the PII it

**CLASS ACTION COMPLAINT**

1    stored on them from attack.

2        92.    Equifax's role to utilize and purportedly safeguard Plaintiffs' and Class

3    Members' PII presents unique circumstances requiring a reallocation of risk.

4        93.    Equifax breached its duties by, among other things: (a) failing to

5    implement and maintain adequate data security practices to safeguard Class

6    Members' PII; (b) failing to detect the Data Breach in a timely manner; (c) failing

7    to disclose that Equifax's data security practices were inadequate to safeguard

8    Class Members' PII; and (d) failing to provided adequate and timely notice of the

9    Data Breach.

10       94.    But for Equifax's breach of its duties, Class Members' PII would not

11   have been accessed by unauthorized individuals.

12       95.    Plaintiffs and Class Members were foreseeable victims of Equifax's

13   inadequate data security practices.  Equifax knew or should have known that a

14   breach of its data security systems would cause damages to Class Members.

15       96.    Equifax's negligent conduct provided a means for unauthorized

16   intruders to obtain Plaintiffs' and the Nationwide Class Members' PII and

17   consumer reports for no permissible purposes under the FCRA.

18       97.    As a result of Equifax's willful failure to prevent the Data Breach,

19   Plaintiffs and Class Members suffered injury which includes, but is not limited to,

20   exposure to a heightened, imminent risk of fraud, identity theft, and financial harm.

21   Plaintiffs and Class Members must monitor their financial accounts and credit

22   histories more closely and frequently to guard against identity theft.  Class

23   Members also have incurred, and will continue to incur on an indefinite basis, out-

24   of-pocket costs for obtaining credit reports, credit freezes, credit monitoring

25   services, and other protective measures to deter or detect identity theft.  The

26   unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished

27   the value of the PII.

28       98.    The damages to Plaintiffs and the Class Members were a proximate,

**CLASS ACTION COMPLAINT**

1  reasonably foreseeable result of Equifax's breaches of its duties.

2       99.    Therefore, Plaintiffs and Class members are entitled to damages in an

3  amount to be proven at trial.

4  <div align="center">**COUNT III**</div>

5  <div align="center">**NEGLIGENCE PER SE**</div>

6  <div align="center">**(On behalf of the Nationwide Class and California Subclass)**</div>

7       100.   Plaintiffs incorporate by reference all paragraphs above as if fully set

8  forth here.

9       101.   Under the FCRA, 15 U.S.C. §§ 1681e, Equifax is required to "maintain

10  reasonable procedures designed to . . . limit the furnishing of consumer reports to

11  the purposes listed under section 1681b of this title."  15 U.S.C. § 1681e(a).

12       102.   Equifax failed to maintain reasonable procedures designed to limit the

13  furnishing of consumer reports to the purposes outlined under section 1681b of the

14  FCRA.

15       103.   Plaintiffs and Class Members were foreseeable victims of Equifax's

16  violation of the FCRA.  Equifax knew or should have known that a breach of its

17  data security systems would cause damages to Class members.

18       104.   As alleged above, Equifax was required under the GLBA to satisfy

19  certain standards relating to administrative, technical, and physical safeguards:

20            **(1)** to ***insure the security and confidentiality of customer***

21            ***records and information***;

22            **(2)** to ***protect against any anticipated threats or hazards to the***

23            ***security or integrity of such records***; and

24            **(3)** to ***protect against unauthorized access to or use of such***

25            ***records*** or information which could result in substantial harm or

26            inconvenience to any customer.

27       105.   In order to satisfy their obligations under the GLBA, Equifax was also

28  required to "develop, implement, and maintain a comprehensive information

security program that is [1] written in one or more readily accessible parts and [2] contains administrative, technical, and physical safeguards that are appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." 16 C.F.R. § 314.4

106.   In addition, under the Interagency Guidelines Establishing Information Security Standards, 12 C.F.R. pt. 225, App. F., Equifax had an affirmative duty to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems." *See id.*

107.   Further, when Equifax became aware of "unauthorized access to sensitive customer information," it should have "conduct[ed] a reasonable investigation to promptly determine the likelihood that the information has been or will be misused" and "notif[ied] the affected customer[s] as soon as possible." *See id.*

108.   Equifax violated by GLBA by failing to "develop, implement, and maintain a comprehensive information security program" with "administrative, technical, and physical safeguards" that were "appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue."  This includes, but is not limited to, Equifax's (a) failure to implement and maintain adequate data security practices to safeguard Class Members' PII; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that Equifax's data security practices were inadequate to safeguard Class Members' PII.

109.   Equifax also violated the GLBA by failing to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems."  This includes, but is not limited to, Equifax's failure to notify appropriate regulatory agencies, law enforcement, and the affected individuals themselves of the Data Breach in a timely

**CLASS ACTION COMPLAINT**

1 and adequate manner.

2     110.   Equifax also violated by the GLBA by failing to notify affected

3 customers as soon as possible after it became aware of unauthorized access to

4 sensitive customer information.

5     111.   Plaintiffs and Class Members were foreseeable victims of Equifax's

6 violation of the GLBA. Equifax knew or should have known that its failure to take

7 reasonable measures to prevent a breach of its data security systems, and failure to

8 timely and adequately notify the appropriate regulatory authorities, law

9 enforcement, and Class Members themselves, would cause injury to Class

10 Members.

11     112.   Equifax's failure to comply with the applicable laws and regulations,

12 including the FCRA and the GLBA, constitutes negligence *per se*.

13     113.   But for Equifax's violation of the applicable laws and regulations,

14 Class Members' PII would not have been accessed by unauthorized individuals.

15     114.   As a result of Equifax's failure to comply with applicable laws and

16 regulations, Plaintiffs and Class Members suffered injury which includes, but is not

17 limited to, exposure to a heightened, imminent risk of fraud, identity theft, and

18 financial harm. Plaintiffs and Class Members must monitor their financial accounts

19 and credit histories more closely and frequently to guard against identity theft.

20 Class Members also have incurred, and will continue to incur on an indefinite basis,

21 out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring

22 services, and other protective measures to deter or detect identity theft. The

23 unauthorized acquisition of Plaintiffs and Class Members' PII has also diminished

24 the value of the PII.

25     115.   The damages to Plaintiffs and the Class Members were a proximate,

26 reasonably foreseeable result of Equifax's breaches of applicable laws and

27 regulations.

28     116.   Therefore, Plaintiffs and Class members are entitled to damages in an

**CLASS ACTION COMPLAINT**

1   amount to be proven at trial.

2   <center>**COUNT IV**</center>

3   <center>**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**</center>

4   <center>**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**</center>

5   <center>**(On Behalf of the Nationwide Class or, in the Alternative, the California**</center>

6   <center>**Subclass)**</center>

7       117.   Plaintiffs incorporate by reference all paragraphs above as if fully set

8   forth herein.

9       118.   California Business & Professions Code § 17200 prohibits any

10  "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue

11  or misleading advertising."  For the reasons discussed above, Equifax violated (and

12  continues to violate) California's Unfair Competition Law, California Business &

13  Professions Code §§ 17200, *et seq.*, by engaging in the above-described unlawful,

14  unfair, fraudulent, deceptive, untrue, and misleading acts and practices.

15      119.   Equifax's unfair and fraudulent acts and practices include, but are not

16  limited to, the following:

17          a.      Equifax failed to enact adequate privacy and security measures,

18  in California, to protect the Class Members' PII from unauthorized disclosure,

19  release, data breaches, and theft, in violation of industry standards and best

20  practices, which was a direct and proximate cause of the Data Breach;

21          b.      Equifax failed to take proper action, in California, following

22  known security risks and prior cybersecurity incidents, which was a direct and

23  proximate cause of the Data Breach;

24          c.      Equifax knowingly and fraudulently misrepresented, in

25  California, that they would maintain adequate data privacy and security practices

26  and procedures to safeguard Class Members' PII from unauthorized disclosure,

27  release, data breaches, and theft;

28

<center>- 33 -</center>
<center>**CLASS ACTION COMPLAINT**</center>

1        d.     Equifax knowingly and fraudulently misrepresented that it did

2   and would comply with the requirements of relevant federal and state laws

3   pertaining to the privacy and security of Class members' PII;

4        e.     Equifax knowingly omitted, suppressed, and concealed the

5   inadequacy of its privacy and security protections for Class Members' PII;

6        f.     Equifax failed to maintain reasonable security, in violation of

7   Cal. Civ. Code § 1798.81.5; and

8        g.     Equifax failed to disclose the Data Breach to Class Members in a

9   timely and accurate manner, in violation of the duties imposed by Cal. Civ. Code

10   §§ 1798.82, *et seq*.

11       120.   Equifax's acts and practices also constitute "unfair" business acts

12   and practices, in that the harm caused by Equifax's wrongful conduct outweighs any

13   utility of such conduct, and such conduct (i) offends public policy, (ii) is immoral,

14   unscrupulous, unethical, oppressive, deceitful and offensive, and/or (iii) has caused

15   and will continue to cause substantial injury to consumers such as Plaintiffs and

16   Class Members.

17       121.   Equifax's acts and practices also constitute "unlawful" business acts

18   and practices by virtue of their violation of the FCRA, 15 U.S.C. §§ 1681e (as

19   described fully above), the GLBA, 15 U.S.C. § 6801 *et seq.* (as described fully

20   above), California's fraud and deceit statutes, Cal. Civ. Code §§ 1572, 1573, 1709,

21   1711; Cal. Bus. & Prof. Code §§ 17200, *et seq*., 17500, *et seq*., the California

22   Customer Records' Act, Cal. Civ. Code §§ 1798.80, *et seq*. (as described fully

23   below), and California common law.

24       122.   There were reasonably available alternatives to further Equifax's

25   legitimate business interests, including using best practices to protect Class

26   Members' PII, other than Equifax's wrongful conduct described herein.

27       123.   As a direct and/or proximate result of Equifax's unfair practices,

28   Plaintiffs, the Nationwide Class, and the California Subclass have suffered injury in

**CLASS ACTION COMPLAINT**

fact in connection with the Data Breach including, but not limited to, the time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII. As a result, Plaintiffs and other Class Members are entitled to compensation, restitution, disgorgement, and/or other equitable relief.  Cal. Bus. & Prof. Code § 17203.

124.   Equifax knew or should have known that its data security practices and infrastructure were inadequate to safeguard Class Members' PII, and that the risk of a data breach or theft was highly likely.  Equifax's actions in engaging in the above named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to Class Members' rights.

125.   On information and belief, Equifax's unlawful and unfair business practices, except as otherwise indicated herein, continue to this day and are ongoing.

126.   Plaintiffs and other Class Members also are entitled to injunctive relief, under California Business and Professions Code §§ 17203, 17204, to stop Equifax's wrongful acts and to require Equifax to maintain adequate security measures to protect the personal and financial information in its possession.

127.   Under Business and Professions Code §§ 17200, *et seq.*, Plaintiffs seek restitution of money or property that Equifax may have acquired by means of Equifax's deceptive, unlawful, and unfair business practices (to be proven at trial), restitutionary disgorgement of all profits accruing to Equifax because of its unlawful and unfair business practices (to be proven at trial), declaratory relief, and attorney's fees and costs (allowed by Cal. Civ. Code Proc. §1021.5).

## COUNT V

### VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT

### Cal. Civ. Code §§ 1798.80, *et seq.*

### (On Behalf of the California Subclass)

**CLASS ACTION COMPLAINT**

128.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

129.   "[T]o ensure that personal information about California residents is protected," Civil Code § 1798.81.5 requires any "business that owns, licenses, or maintains personal information about a California resident [to] implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

130.   Equifax owns, maintains, and licenses personal information, within the meaning of § 1798.81.5, about Plaintiffs and the California Subclass.

131.   Equifax violated Civil Code § 1798.81.5 by failing to implement reasonable measures to protect Class Members' PII.

132.   As a direct and proximate result of Equifax's violations of section 1798.81.5 of the California Civil Code, the Data Breach described above occurred.

133.   In addition, California Civil Code § 1798.82(a) provides that "[a] person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person.  The disclosure shall be made in the most expedient time possible and without unreasonable delay . . . ."

134.   Section 1798.2(b) provides that "[a] person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

**CLASS ACTION COMPLAINT**

135.   Equifax is a business that own or license computerized data that include personal information as defined by Cal. Civ. Code §§ 1798.80, *et seq.*

136.   In the alternative, Equifax maintains computerized data that includes personal information that Equifax does not own as defined by Cal. Civ. Code §§ 1798.80, *et seq.*

137.   Plaintiffs and the California Subclass members' PII (including, but not limited to, names, addresses, and Social Security numbers) includes personal information covered by Cal. Civ. Code § 1798.81.5(d)(1).

138.   Because Equifax reasonably believed that Plaintiffs and the California Subclass members' personal information was acquired by unauthorized persons during the Data Breach, it had an obligation to disclose the Data Breach in a timely and accurate fashion under Cal. Civ. Code § 1798.82(a), or in the alternative, under Cal. Civ. Code § 1798.82(b).

139.   By failing to disclose the Data Breach in a timely and accurate manner, Equifax violated Cal. Civ. Code § 1798.82.

140.   As a direct and proximate result of Equifax's violations of sections 1798.81.5 and 1798.82 of the California Civil Code, Plaintiffs and the California Subclass members suffered the damages described above including, but not limited to, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

141.   Plaintiffs and the California Subclass seek relief under § 1798.84 of the California Civil Code including, but not limited to, actual damages in an amount to be proven at trial, and injunctive relief.

## COUNT VIVI

## VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

**Cal. Civ. Code §§ 1750, *et seq*.**

**CLASS ACTION COMPLAINT**

**(On Behalf of the California Subclass)**

142.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

143.   The Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA") has adopted a comprehensive statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes.  The self-declared purposes of the CLRA are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

144.   Equifax is a "person" as defined by Civil Code Section 1761(c), because Equifax is a corporation as set forth above.

145.   Plaintiffs and Class Members are "consumers," within the meaning of Civil Code Section 1761(d), because they are individuals who purchased products and/or services from Equifax.

146.   Equifax performed "services," as defined by California Civil Code Section 1761(a), with respect to its compilation, maintenance, use, and furnishing of Plaintiffs' and California Subclass members' PII that was compromised in the Data Breach.

147.   Equifax's sale of their services to other consumers and businesses in California constitutes "transaction[s]" which were "intended to result or which result[ed] in the sale" of services to consumers within the meaning of Civil Code Sections 1761(e) and 1770(a).

148.   Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money as a result of Equifax's actions as set forth herein.  Specifically, Plaintiffs' PII has been compromised and is imminently threatened with financial and identity theft, and, in fact, may have already suffered actual fraud.

**CLASS ACTION COMPLAINT**

149.   Section 1770(a)(5) of the CLRA prohibits anyone from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ."  Equifax represented that its credit background check services would adequately secure Plaintiffs' and California Subclass members' PII when in fact its computer systems were inadequately protected and susceptible to breach.

150.   Section 1770(a)(7) of the CLRA prohibits anyone from "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Equifax represented that its credit background check services would adequately secure Plaintiffs' and California Subclass members' PII when in fact its computer systems were inadequately protected and susceptible to breach.

151.   Section 1770(a)(9) of the CLRA prohibits anyone from "[a]dvertising goods or services with intent not to sell them as advertised."  As noted above, Equifax failed to provide adequate security to the PII it was entrusted to secure for the purposes of conducting credit background checks.

152.   A written pre-suit demand under Cal. Civ. Code § 1782(a) is unnecessary and unwarranted because Equifax has long had notice of Plaintiffs' allegations, claims and demands.

153.   Plaintiffs, individually and on behalf of the California Subclass, seek damages, an order enjoining the acts and practices described above, and attorneys' fees and costs under the CLRA.

### VII.  PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Equifax as follows:

A.   An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class and Subclass requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiffs

**CLASS ACTION COMPLAINT**

1              are proper representatives of the Class and Subclass requested herein;

2    B.     Injunctive relief requiring Equifax to (1) strengthen its data security

3              systems that maintain PII to comply with the FCRA and GLBA, the

4              applicable state laws alleged herein (including, but not limited to, the

5              California Customer Records Act) and best practices under industry

6              standards; (2) engage third-party auditors and internal personnel to

7              conduct security testing and audits on Equifax's systems on a periodic

8              basis; (3) promptly correct any problems or issues detected by such

9              audits and testing; and (4) routinely and continually conduct training to

10             inform internal security personnel how to prevent, identify and contain

11             a breach, and how to appropriately respond;

12   C.     An order requiring Equifax to pay all costs associated with class notice

13             and administration of class-wide relief;

14   D.     An award to Plaintiffs and all Class (and Subclass) members of

15             compensatory, consequential, incidental, and statutory damages,

16             restitution, and disgorgement, in an amount to be determined at trial;

17   E.     An award to Plaintiffs and all Class (and Subclass) members of

18             additional credit monitoring and identity theft protection services

19             beyond the one-year package Equifax is currently offering;

20   F.     An award of attorneys' fees, costs, and expenses, as provided by law or

21             equity;

22   G.     An order requiring Equifax to pay pre-judgment and post-judgment

23             interest, as provided by law or equity; and

24   H.     Such other or further relief as the Court may allow.

25   **VIII. DEMAND FOR JURY TRIAL**

26        Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, individually and on

27   behalf of the proposed classes they seek to represent, demand a jury on any issue so

28   triable of right by a jury.

**CLASS ACTION COMPLAINT**

1

2

DATED: September 11, 2017          KABATECK BROWN KELLNER

3                                             By: /s/ Brian S. Kabateck

4                                                   BRIAN S. KABATECK
                                                    NATALIE S. PANG
5
                                             Attorneys for Plaintiffs and the Proposed
6                                            Classes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**